The first case in all oral argument is Porter v. Litton Ambulance Service. Thank you. Counsel, at your convenience. Good morning. Good morning. Good morning. Please sit down. They have little guys on motorcycles now on the interstate that stop and visit with you from time to time. I apologize for... How many? I'm sorry. How many did you actually visit with? Just one. They aren't as easy to spot, are they? I wasn't trying to spot them. I was just trying to obey the... The law! My voice is rising in my life. And get here on time. I had car trouble at first. I had trouble getting in the car. Anyhow, I apologize. No, that's not a problem at all, believe me. This is not a complicated case. I think the briefs pretty much state it. The issue is whether or not in suing an ambulance, you... You have to have an affidavit of merit. I don't believe the law requires that. I don't believe anytime anybody that's involved in healthcare is sued, you have to have the requisite 622. I don't think 622 applies to EMT people. I think that's what the judge, the trial court held. There's our position there. There's our position now. I don't think the legislature can require that I have a plumber sign an affidavit every time I sue somebody in a construction case. And I don't think they can require a medical doctor to sign a report against somebody that's not a medical doctor when that person couldn't even testify against the EMT when the case came to trial. I really don't have anything more to say except what's in the briefs. Thank you. Thank you, counsel. Counsel? Good morning. May I please report? Good morning, counsel. The plaintiff's counsel identified the issue as whether when you're suing an ambulance, you need an affidavit of merit. However, unfortunately, the plaintiff's complaint does not allege a claim simply as he has stated in his briefs for a statutory or regulatory violation. He has alleged a healing arts malpractice claim. The background of the plaintiff's complaint is that it's nine paragraphs. And in those nine paragraphs, there are no references to any statutes or regulations. The thrust of the allegations is that the EMTs on site failed to render appropriate care to the plaintiff's decedent. And that phrase, lack of appropriate care, is repeated throughout those nine paragraphs. The complaint lacks any specific facts of what care was provided or was lacking, what equipment was used or missing, what personnel treated the plaintiff or not, and whether those personnel had any deficiencies in training or not. What it does have is conclusory allegations simply stating that the defendant acted with gross negligence and willful and lawless conduct, which is contrary to Illinois pleading requirements. There are simply no details except for the repeated phrase of lack of appropriate care rendered to the plaintiff's decedent. Now, the plaintiff has claimed in his briefs that his complaint alleges violations of the regulations for licensing an ambulance, which is simply not supported by the record. And you can find the complaint in the record of pages C6 through 8 or Defendant's Appendix, pages A4 through 6. Furthermore, the plaintiff's own behavior in this case shows that she absolutely believes that her claim was for healing arts malpractice. The plaintiff here has filed two complaints, both with a 2-622 affidavit availing herself of the 90-day extension as of right. The EMS Act was not raised by the plaintiff until faced with the prospect that she could not have a second 90-day extension to file a 2-622 affidavit and report. At the time, the Cargill case was good law, and she would have been foreclosed from having a second 90-day extension. So the plaintiff needed to backpedal on her position. So she raised the EMS Act in motion practice before the trial court, never in the complaint, only in motion practice. But then realized upon when Defendant raised the issue that 210 ILCS 50 forward slash 30.150 of the EMS Act states that it does not create a cause of action or civil liability. So the plaintiff had to backpedal further. That's when she decided to raise the ambulance licensing regulations. And those licensing regulations were raised for the first time in this court, in the reply brief. They have never been argued to the trial court, and they were never argued in the opening brief in this court, only in the reply brief. Now, based on the face of the complaint itself, and the plaintiff's own behavior in this case of filing two complaints with 2-622 affidavits, this claim is clearly not one for statutory or regulatory violation. It is for healing arts malpractice. And this court can affirm the trial court's decision by looking to the Lyon case cited by the Fourth District, which is cited in our brief. That case is also a case about whether an ambulance was properly equipped to render appropriate treatment to a particular patient. The allegations that the Fourth District speaks of in that opinion are similar to the allegations in this plaintiff's issue here. Both allege a lack of appropriate treatment by EMS personnel to a patient in the particular condition that the patient presented with. In the Lyon court determined that such allegations plead a healing arts malpractice claim. Specifically, they state the determination of which equipment is necessary and precautionary to meet a person in plaintiff's condition's needs is inherently one of medical judgment. When you're questioning the medical judgment that was implemented, that is a claim for healing arts malpractice. Further, in the reply brief, the plaintiff cites the Jackson case, which lists out the three factors for determining whether a case is healing arts malpractice. And even under those factors, this complaint clearly is a healing arts malpractice claim. Those three factors are whether the standard of care involves procedures not within the grasp of an ordinary layjuror, whether the activity is inherently one of medical judgment, and the type of evidence necessary to establish the plaintiff's case. And if you apply those three factors to the allegations of the complaint here, you can see that a layjuror will not know what constitutes appropriate care for a patient that presents to EMS personnel with possible signs and symptoms of a possible myocardial infarction, which is the language that appears in the complaint. Whether the activity is inherently one of medical judgment, the second factor, that's been decided by the Lyon court that says it is. And the third factor, as far as what evidence plaintiff will need to establish the case, a plaintiff would need expert testimony as far as what care ought to have been rendered to this report. So based on the three factors from the Jackson case and the Fourth District's reasoning in the Lyon case, this court can affirm that this is a healing arts malpractice claim. And plaintiff cites in their brief three cases, the Cohen case, the Collins v. Lake Forest Hospital, and Chadwick v. Albasha case in support of their argument that this is not a healing arts malpractice claim. But none of those cases are factually or legally similar to the complaint pleaded here. Here, in those cases, the plaintiff's allegations were not directed to the actual medical care or the appropriateness of the treatment rendered. Rather, in Cohen, it was a battery based on invasion of privacy was the allegation. In Collins, the allegation was based on the Health Surrogate Care Act failure to notify the health care surrogate and not the treatment of the underlying head injury for the patient that had the head injury. And in Chadwick, the claim was based on the use of restraints of a mental health care patient and not the treatment of the mental health care patient's underlying condition. The Porter complaint here attacks the standard of care that the allegations are that the plaintiff's decedent didn't receive appropriate care. Also, in the Collins and Chadwick cases, the complaints there contained allegations that the defendants violated very specific statutes and failure to follow statutory directives that applied in those situations. So with the Health Care Surrogate Act, in the Collins case, there were specific statutory directives for determining when a patient lacked decisional capacity and how that had to be recorded in the chart and then other activities that a physician had to follow thereafter. In the Chadwick case, the mental health code is specific and has specific requirements about when restraints may be used. Those types of allegations do not exist in the complaint at issue in this case. It cites neither statutes nor regulations of any sort. It doesn't even refer to them in the code. Because plaintiff's cases are not on point and because the Porter pleading does satisfy the three factors for a healing arts malpractice claim set out in Jackson and that the Lyon court has determined that this should be a healing arts malpractice claim, the trial court did not err in treating plaintiff's claim as such. Furthermore, the trial court properly dismissed the complaint with prejudice for failure to comply with 2-622 requirements. There is no dispute that the plaintiff filed two complaints. Each time the complaint was filed availed herself of the 2-622A2 90-day extension as of right. There's no dispute that the first complaint was filed in September of 2006 and that the second complaint was dismissed in September of 2008. So that's a two-year time period in which the appropriate certificate of merit and professional's report could have been obtained. But it never was obtained and never was filed with the court before the case was ultimately dismissed. Now on facts very similar to this, the second district has affirmed dismissal with prejudice in the Wasilewski case cited in defendant's brief. In Wasilewski, that plaintiff also filed two complaints about 15 months apart. Both times sought 90-day extensions under 622A2 and both times failed to file a certificate of merit within the 90-day extension. The appellate court there found that the trial court was not required to exercise its discretion in plaintiff's favor when the plaintiff had been given numerous opportunities to comply with 2-622. And really the facts are the same here. There were numerous opportunities to comply. The plaintiff never did. Therefore, the trial court appropriately dismissed with prejudice. The plaintiff's argument is that he needed leave of court to file the 2-622 certificate of merit and report. However, that's contrary to the plain language of section 622A2 which states, quote, If an affidavit is executed pursuant to this paragraph, the certificate and written report required by paragraph one shall be filed within 90 days after the filing of the complaint. Now what plaintiff tries to do is to graft section 2-616 into 622 which is contrary to the plain language of 622. 622 does not say the plaintiff needs to petition the court for leave to file their affidavit and certificate of merit report within the 90 days. It says it just shall be filed. They're within a period of time where they have an extension as of right and the statute very plainly says, file it. So furthermore, there's no language in 2-616 or 622 that cross-references each other that would make one think that you ought to read the requirements of 616 into 622. And it's just simply not logical in the face of the plain language of 622 to read it any other way. The plaintiff here also argues that if he had filed the certificate of merit and the report without first obtaining permission of the court, it would have been a nullity. There's nothing in 622 that supports that position. And the cases that the plaintiff relies upon are not on point either. He relies on McCassell v. Sheinkopf. In that case, the plaintiff filed none of the affidavits that you could file under 2-622. So the plaintiff there was not operating under an automatic extension as of right as the plaintiff here was. And therefore, the facts of the McCassell case are not relevant to the facts of the procedural posture of this case. The plaintiff also cites the Moyer v. Southern Illinois Hospital Services case. In that situation, that was a 5th District case. And in that situation, the plaintiff filed a malpractice complaint. And instead of filing a report, they filed deposition transcript pages, which the trial court said that doesn't meet the requirements of 2-622, and then dismissed the complaint as well as the attached transcript pages. The plaintiff refiled the same complaint with a physician's report and affidavit, but he did so without leave of court to file the amended complaint. Well, here in this case, there was a complaint on file that had not been dismissed in the time period that the plaintiff needed to put the report on file. And so the facts of the Moyer case don't apply to the situation at issue here. In Cato v. Attar, again, none of the 2-622 affidavits were filed by the plaintiff at the time of filing the complaint. And then within 60 days of filing the complaint, the plaintiff moved to amend to include the affidavit and report of the medical professional. The trial court, however, denied that motion to amend and dismissed the case with prejudice. And on appeal, the trial court or the appellate court reversed that decision because had the plaintiff in that case filed originally a 622A2 affidavit, they would have had the 90 days to submit it. And so it was an unfair outcome to dismiss their case when they tried to amend to do the appropriate thing within 60 days. And so, again, those facts, though, don't apply to the facts at issue before the court today. There's no reasonable reading of 2-622A2 that requires the trial court to grant leave to file the required certificate and affidavit reference in Section A1 of that statute. The plaintiff had numerous opportunities to provide the 622 documents. And because they were never filed, the trial court did not abuse its discretion in dismissing the case with prejudice. The plaintiff is bound by her complaint, which mentions nowhere any regulatory violations. This is a healing arts malpractice claim according to the Lyon case and the Jackson three factors test. And the trial court did not err in dismissing this case with prejudice. And for those reasons, defendant let an ambulance service request that this court affirm the trial court's decision dismissing the prejudice. Thank you. Thank you, counsel. Counsel? Counsel, to the court, the case law says that there has to be medical judgment. And I really think that is the key to the issue of whether an affidavit is required. I think you have to look at the entire nature of what the legislature was attempting. And the effort, the goal was to stop frivolous lawsuits. This is a sort of widowed, this is a frivolous lawsuit. But the counsel keep referring to the pleadings. And the pleadings, whether I alleged violations of particular sections of the code or not is irrelevant. I alleged a cause of action. They didn't contest that. How I prove it is another matter. But the issue really does boil down to medical judgment because the concept is to stop frivolous medical malpractice lawsuits. Not to stop lawsuits in general or to make it hard for lawsuits in general to be filed. If this case were to be tried, the people involved could not be held to the standard of exercising medical judgment. They aren't doctors. They can't exercise medical judgment. The whole purpose of the act is to protect those who do because we believe that people who exercise medical judgment should have certain protections not granted to the rest of our society. Somebody goes to the doctor's office, they're usually sick when they go in. The doctor didn't cause it. Medical judgment applies. There's a need to protect these people. It doesn't apply to anybody who doesn't exercise medical judgment. And an ambulance company can't exercise medical judgment. If they tried to, it would be a violation of the law. If you carry this through to its logical conclusion, which we hardly ever do, but you have a report signed by somebody who can't testify. This court has recently held that, with all due respect, I think wrongly, that a medical doctor can't criticize a nurse practitioner. Well, there is no school of medicine that protects ambulance drivers. But ambulance drivers are held to the standard of care of ambulance operators, the standard of care of ambulance operators, not heart surgeons. So I could have the world's greatest heart surgeon say, golly, they should have done something differently here. That's an exercise of medical judgment. But there's no medical judgment involved here because there are no medical people involved here. Because you are involved somehow. I had a client the other day, a witness, say that she was in the health care profession. I said, what do you do? She said, I'm a dental hygienist. OK, nothing wrong with that. But I'm not sure what that has to do with medical care or medical judgment. And ambulance companies have requirements that they have to meet, and they're protected by the statute. This is a gross negligence case. They are protected by the statute, giving immunities that the standard is higher than anybody else. But my gosh, there's no way in the world I should be required, or anybody should be required, to have a doctor sign a complaint against an ambulance company when, at the trial of the case, the doctor couldn't testify about the ambulance company, and when there is absolutely no medical judgment involved. They have no medical involvement. Thank you. Thank you, counsel. We appreciate the briefs and arguments of counsel. We'll take the case under advisement. Thank you.